UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
------------------------------------------------------------ x
THE SWEETBRIDGE GROUP, LLC,                                  :
                                                             :
                            Plaintiff,                       :
                                                             :
            v.                                               :   3:22-CV-00722 (SFR)
                                                             :
ROBINSON & COLE, LLP,                                        :
                                                             :
                            Defendant.                       :
------------------------------------------------------------ x
```

**MEMORANDUM AND ORDER**

The Sweetbridge Group, LLC ("SBG") has brought claims against Robinson & Cole LLP ("R+C") for breach of contract, tortious interference, and defamation. *See* Am. Compl., ECF No. 4. Following discovery, R+C moved for summary judgment on all claims, Def.'s Mot. Summ. J., ECF No. 62, and SBG moved for summary judgment on its breach of contract claim, Pl.'s Mot. Partial Summ. J., ECF No. 61. For the following reasons, R+C's Motion for Summary Judgment is **GRANTED** and SBG's Motion for Partial Summary Judgment is **DENIED**.

**I.   BACKGROUND**

   **A.   Factual Background**

The following facts are undisputed unless otherwise noted.[1] This case centers around an agreement entered into by R+C, a law firm, and SBG, a legal recruitment company. In

---

[1] The factual background is drawn primarily from facts admitted in Plaintiff's Local Rule 56(a)(2) Statement submitted in response to Defendant's Motion for Summary Judgment, ECF No. 65-1 ("Pl.'s L.R. 56(a)(2) St."), and facts admitted in Defendant's Local Rule 56(a)(2) Statement submitted in response to Plaintiff's Partial Motion for Summary Judgment, ECF No. 67 ("Def.'s L.R. 56(a)(2) St."). Citations to these statements are by paragraph number. With respect to other documents, page citations are to the page number generated by the ECF system.

Spring 2021, R+C began communications with both SBG and Major Lindsay & Africa Partners ("MLA"), another legal recruitment company, regarding R+C's potential interest in acquiring or merging with another law firm. Def.'s L.R. 56(a)(2) St. ¶¶ 3, 10. R+C connected with SBG following outreach from Kimberly Stockinger, SBG's sole member, to R+C chief operating officer Michael Orce regarding a career opportunity at another firm. *Id.* ¶¶ 2, 3.

On April 26, 2021, R+C and SBG entered into a two-page Law Firm Merger or Acquisition Agreement ("Agreement"). Pl.'s L.R. 56(a)(2) St. ¶¶ 4, 5; Agreement, ECF No. 62-3. The Agreement covers "the terms and conditions of firm merger or acquisition introductions The Sweetbridge Group LLC may provide Robinson & Cole LLP ('Client')." Agreement at 1. The Agreement provides:

> The Sweetbridge Group shall identify the candidate ("Firm") to Client only after confirming that the Client is interested in receiving the referral, after confirming with the Firm that the Client and Firm have not formally discussed a merger or acquisitions in the last twelve months, and the Firm has approved the introduction. *The Firm's introduction is confidential. Client shall not refer or identify Firm to any other company or firm.*

*Id.* (emphasis added). The Agreement provides that R+C will pay SBG only if the introduction results in a transaction between the two firms, and R+C "shall be free to locate and recruit any firms, groups or attorneys, on its own or through other recruiters." *Id.* at 1-2. The Agreement may be terminated at will by either party. *Id.* at 2. However, if the Agreement is terminated and "a Firm introduced by [SBG] enters into an agreement with [R+C] within two years of the last substantive conversation with each other," then the fee provision in the Agreement continues to apply. *Id.*

After entering the Agreement, SBG presented R+C with the names of seven firms to consider. Pl.'s L.R. 56(a)(2) St. ¶ 14. R+C immediately declined to pursue four of the firms

2

due to conflicts with R+C's clients or the firm's own preferences. *Id.* Stephen Goldman, former managing partner at R+C, then had one introductory conversation with each of the three remaining firms: Ulmer & Berne LLP ("Ulmer & Berne"), Brooks, Pierce, McLendon, Humphrey, & Lenord, LLP ("Brooks Pierce"), and Nexsen Pruet, LLC ("Nexsen Pruet"). *Id.* ¶¶ 14, 15. None of those three firms have had a Law Firm Merger or Acquisition Agreement with SBG at any time. *Id.* ¶ 17. SBG had connected with these three firms through sending "cold" emails. *Id.* ¶ 16. By June 29, 2021, R+C was no longer in conversations with any of these three firms about a potential merger or acquisition. *Id.* ¶¶ 23-24.

During this same time period, R+C began discussing the possibility of employing MLA to assist with its potential merger and acquisition interests. *Id.* ¶ 26. R+C had a previous relationship with MLA. *Id.* ¶ 25. R+C and MLA entered into an agreement ("MLA Agreement") on June 29, 2021. *Id.* ¶ 27; MLA Agreement, ECF 62-8. On June 23, 2021, before the MLA Agreement was finalized, R+C's Michael Orce emailed MLA's Kimberly Donlon attaching a draft agreement. ECF No. 65-9 at 1. Orce stated that once they figured out the terms of the agreement, "[w]e can then provide you with a list of firms we have already had discussions with." *Id*. On June 28, 2021, Donlon emailed Orce asking him to sign the attached agreement and provide an "addendum list of contacted firms." ECF No. 65-10 at 1. Donlon added that MLA was "starting to prepare target lists on our side which we should have to you early next week." *Id.*

On June 29, 2021, MLA and R+C executed an exclusive agreement "pursuant to which MLA-Partners shall, on behalf of Firm, conduct a 90-day exclusive search to recruit one or more groups of partner, counsel and associate level attorneys ('Groups'), or appropriate firms for the purpose of consummating . . . [a] merger." MLA Agreement at 1. The agreement states

3

that "MLA-Partners shall not earn a Fee for those attorneys and Candidate Firms specifically listed in Exhibit A ('Excluded Attorneys and Candidate Firms.')." *Id.* In his email sending the signed agreement to MLA, Orce noted that he had included "the list of Excluded Firms." ECF No. 62-10 at 1; Pl.'s L.R. 56(a)(2) St. ¶ 28. The list was appended to the end of the agreement and contained 15 names, including the three firms that SBG had introduced to R+C (Ulmer & Berne, Brooks Pierce, and Nexsen Pruet). MLA Agreement at 7. In his email, Orce noted "I'm not sure how to handle the following, but there are also a number of firms that we considered internally that we excluded and never contacted because of practice fit." ECF No. 62-10 at 1. Later that same day, MLA responded saying: "Yes, please send us the list of the firms you have already considered internally and are not in the mix for consideration. This will help streamline our vetting process." ECF No. 62-11 at 3. Orce then provided by email 122 additional names. *Id.* at 1-2.[2]

On June 30, 2021, Stockinger proposed to represent R+C in the firm's merger and acquisition search in an exclusive capacity for six months. Pl.'s L.R. 56(a)(2) St. ¶ 30. Orce spoke with Stockinger one day later and informed her that R+C had just retained MLA on an exclusive basis for a limited period of time. *Id.* ¶ 31. Stockinger did not agree to conversations about a fee-sharing arrangement. *Id.* ¶ 34. By July 6, 2021, R+C had terminated the Agreement with SBG and Stockinger had acknowledged that the Agreement was terminated. *Id.* ¶ 35.

---

[2] Orce explained at his deposition that the list of firms R+C had already had discussions with was "included as part of Exhibit A." ECF No. 61-4 at 9. The firms in Exhibit A were firms R+C had "reached out to at one point or another." *Id.* at 10. The purpose of the list was to "let MLA know that they need not spend time trying to contact them for us because we've already been down that road." *Id.*

4

After this case was filed on August 10, 2021, media organizations contacted R+C regarding the pending lawsuit.[3] Pl.'s L.R. 56(a)(2) St. ¶ 37. R+C issued the following statement on August 11, 2021 in response to a request for comment from USA Today:

> We are executing our Strategic Plan which calls, in part, for growth through combinations with smaller firms and groups that offer strategic advantage through their practices and/or locations. As part of that initiative, we engaged [Sweetbridge] which identified three firms that we considered. None were viable opportunities. We later engaged a different recruiter to explore opportunities with different firms. This lawsuit followed our termination of our relationship with the plaintiff and our retention of that other recruiting firm. We strongly contest the allegations in the complaint and will defend the matter aggressively.

Order, ECF No. 15 at 7.[4]

R+C has not merged or acquired Ulmer & Berne, Brooks Pierce, or Nexsen Pruet. Pl.'s L.R. 56(a)(2) St. ¶ 45. In support of its summary judgment motion, R+C has submitted affidavits from leaders at these three law firms who had spoken to R+C's Stephen Goldberg

---

[3] The parties acknowledged at oral argument that the quotes contained in the Court's order transferring this case to the District of Connecticut, *see* Order, ECF No. 15 at 7, are the relevant statements to consider for purposes of SBG's defamation claim.

[4] A second, substantially similar quote was provided to Law360 and Thomson Reuters for comment on the same day stating:

> We are executing our Strategic Plan which calls, in part, for growth through combinations with smaller firms and groups that offer strategic advantage through their practices and/or locations. The recruiting relationship that gave rise to this lawsuit was part of that initiative. This suit followed our termination of the firm's relationship with [Sweetbridge] and our retention of another recruiting firm. We strongly contest the allegations in the complaint and will defend the matter aggressively.

Order, ECF No. 15 at 6. Reuters published an article regarding the suit on August 11, 2021. The Sioux Falls Argus Leader published the following day. Both articles included the quote: "This suit followed our termination of the firm's relationship with the Sweetbridge Group and our retention of another recruiting firm." *Id.* at 7.

after receiving unsolicited emails from Stockinger in April 2021. *See* ECF Nos. 62-14, 62-15, 62-16. Each law firm leader confirms that they never had any agreement of any kind with SBG and is aware of "no business or contractual relationship or expectancy that [SBG] could validly claim" to have with their firm. ECF Nos. 62-14 ¶ 7, 62-15 ¶ 7, 62-16 ¶ 8. In addition, each confirms that they are not aware of MLA ever seeking to introduce any merger or acquisition candidates to their firms at any time since April 26, 2021. ECF Nos. 62-14 ¶ 8, 62-15 ¶ 8, 62-16 ¶ 9.

### B.     Procedural History

On August 10, 2021, SBG filed its complaint in the U.S. District Court for the District of South Dakota. Compl., ECF No. 1. On August 16, 2021, SBG filed an Amended Complaint alleging claims for breach of contract, tortious interference, and defamation against R+C. Am. Compl., ECF No. 4. R+C moved to dismiss the Amended Complaint for lack of personal jurisdiction. Def.'s Mot. Dismiss, ECF No. 5. SBG opposed the motion and, in the alternative, moved for the case to be transferred to the District of Connecticut. Pl.'s Opp'n Mot. Dismiss, ECF No. 10; Conditional Mot. Transfer, ECF No. 12. On May 27, 2022, U.S. District Court for the District of South Dakota granted Defendant's Motion to Dismiss for lack of personal jurisdiction and Plaintiff's Motion for Transfer. Order, ECF No. 15 at 19 ("The court does not have personal jurisdiction over Robinson, but the case can properly be heard in the District of Connecticut."). On May 30, 2022, this case was transferred to this Court. ECF No. 16. On July 12, 2023, SBG moved for summary judgment on its breach of contract claim and R+C moved for summary judgment as to all claims. Pl.'s Partial Mot. Summ. J., ECF No. 61; Def.'s Mot. Summ. J., ECF No. 62. This case was transferred to me on January 6, 2025. Order of Transfer, ECF No. 70. I held oral argument on the motions on June 18, 2025. ECF No. 73.

## II. LEGAL STANDARD

The Court will grant a motion for summary judgment only if the record shows no genuine issue as to any material fact, and the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute of material fact 'exists for summary judgment purposes where the evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury could decide in that party's favor.'" *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013) (quoting *Guilbert v. Gardner*, 480 F.3d 140, 145 (2d Cir. 2007)).

The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986). The non-moving party may defeat the motion by producing sufficient specific facts to establish that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247-48. The moving party may satisfy this burden by pointing out to the district court an absence of evidence to support the nonmoving party's case. *See PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam).

When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the nonmoving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted). The party

7

opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.*; *see also Atkinson v. Rinaldi*, 3:15-cv-913 (DJS), 2016 WL 7234087, at *1 (D. Conn. Dec. 14, 2016) (holding nonmoving party must present evidence that would allow reasonable jury to find in his favor to defeat motion for summary judgment); *Pelletier v. Armstrong*, 3:99-cv-1559 (HBF), 2007 WL 685181, at *7 (D. Conn. Mar. 2, 2007) ("[A] nonmoving party must present 'significant probative evidence to create genuine issue of material fact.'") (quoting *Soto v. Meachum*, 3:90-cv-270 (WWE), 1991 WL 218481, at *6 (D. Conn. Aug. 28, 1991)).

When deciding a motion for summary judgment, the Court may review the entire record, including the pleadings, depositions, answers to interrogatories, admissions, affidavits, and any other evidence on file to determine whether there is any genuine issue of material fact. *See* Fed. R. Civ. P. 56(c); *Pelletier*, 2007 WL 685181, at *4. In reviewing the record, the Court must "construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Gary Friedrich Enters., LLC v. Marvel Characters, Inc.*, 716 F.3d 302, 312 (2d Cir. 2013) (citation omitted). If there is any evidence in the record from which a reasonable factual inference could be drawn in favor of the non-moving party for the issue on which summary judgment is sought, then summary judgment is improper. *See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004). All in all, "a 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (per curiam) (quoting *Anderson,* 477 U.S. at 249).

### III. DISCUSSION

#### A. Choice of Law

The parties agreed at oral argument that Connecticut's choice of law rules apply in this case because the case was transferred to the District of Connecticut for lack of personal jurisdiction in the District of South Dakota. *See* Order, ECF No. 15 at 18-19 (transferring case after concluding court lacked personal jurisdiction over R+C); *Levy v. Pyramid Co. of Ithaca*, 871 F.2d 9, 10 (2d Cir. 1989) (transferee laws apply after transfer for lack of personal jurisdiction). Therefore, Connecticut's choice of law controls in this case.

#### B. Breach of Contract Claim

In Count One of the Amended Complaint, SBG alleges that R+C breached the Agreement when it shared with MLA the names of three firms that SBG had introduced to R+C. Am. Compl., ECF No. 4 at 3. SBG seeks partial summary judgment on the claim, leaving the question of damages to trial. Pl.'s Mem. Law Supp. Partial Mot. Summ. J. ("Pl.'s Mem."), ECF No. 61-1 at 4. R+C moves for summary judgment on the breach of contract claim, asserting that SBG failed to perform under the contract, R+C did not breach the contract, and SBG did not suffer any damages. Def.'s Mem. Law Supp. Mot. Summ. J. ("Def.'s Mem."), ECF No. 62-1 at 10-21. I conclude based on undisputed facts that R+C did not breach the Agreement when it included the three law firm names on a list provided to MLA. Because I conclude there was no breach of the contract, I do not reach R+C's argument that SBG failed to perform and suffered no damages.

SBG agreed at oral argument that Connecticut law provides the substantive law governing this breach of contract claim. The elements of a breach of contract claim are the formation of an agreement, performance by one party, breach of the agreement by the other

9

party, and damages. *Meyers v. Lingston, Adler, Pulda, Meiklejohn & Kelly, P.C.*, 87 A.3d 534, 540 (Conn. 2014). "A contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction." *Murtha v. City of Hartford*, 35 A.3d 177, 182 (Conn. 2011) (internal quotation marks omitted). The "intent of the parties is to be ascertained by a fair and reasonable construction of the written words" and "the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter" of the writing. *Id.* (internal quotation marks omitted). A contract must be "viewed in its entirety, with each provision read in light of other provisions." *Id.* at 183 (internal quotation marks omitted).

The Agreement provides "the terms and conditions of firm merger or acquisition introductions" that SBG may provide to R+C. Agreement at 1. Under the agreement, SBG will identify a candidate ("Firm") to R+C ("Client") only after the Firm "has approved the introduction." *Id.* Moreover: "The Firm's introduction is confidential. Client shall not refer or identify Firm to any other company or firm." *Id.*

At issue is the scope of the Agreement's confidentiality provision. SBG acknowledged at oral argument, as Stockinger did at her deposition, *see* ECF No. 65-2 at 8, that not *every* mention of the three firms by R+C would be a breach of the Agreement. Rather, SBG asserted at oral argument that if a firm was introduced to R+C by SBG, then R+C cannot communicate to another party that the firm is interested in a merger or acquisition—even if R+C refrains

10

from sharing that the source of its knowledge was an introduction of the firm to R+C by SBG.[5] In contrast, R+C asserts that it is the fact of SBG's *introduction* of the firm to R+C as a candidate for merger or acquisition that is confidential under the Agreement. Def.'s Mem., ECF No. 66 at 6-9.[6] R+C points to the following exchange during Stockinger's deposition:

> Q: What's confidential is that [SBG] has introduced the firm as a candidate for merger or acquisition. Right?
>
> A: Right.

ECF No. 65-2 at 9; Def.'s Mem. Law Opp'n Pl.'s Mot. Summ. J., ECF No. 66 at 6.

I agree with R+C that the Agreement prevents R+C from disclosing the fact that SBG *introduced* a particular firm to R+C. The plain language of the Agreement states that the "Firm's introduction is confidential." The sentence that follows, providing that R+C "shall not refer or identify Firm to any other company or firm," is not a standalone prohibition disconnected from the sentence that precedes it. Indeed, interpreting the Agreement to mean that R+C could never disclose the names of the firms "to any company or firm in any context, ever" would be an "absurd" interpretation. Def.'s Reply Br. at 3, ECF No. 69. Moreover, SBG's argument that the Agreement prevents R+C from communicating simply that a firm is interested in merger or acquisition does not follow from the plain language of the contract, which states that SBG's *introduction* of the firm to R+C is confidential.

---

[5] SBG argued in its opening brief in support of summary judgment that "Robinson is contractually forbidden from sharing the names it receives from SBG with any other company or firm" and "[i]t is the identity of the candidate firms that the contract addresses, not the fact that Robinson became aware of the firm's interest in mergers or acquisitions through SBG." ECF No. 61-1 at 5.

[6] R+C asserts that this list protected SBG's interests as had R+C merged with any of the three firms, then SBG rather than MLA would have been entitled to a fee. Def's Mem., ECF No. 62-1 at 12.

11

The facts regarding the alleged breach of the Agreement are undisputed. R+C included the three firms on a list of "Excluded Attorneys and Candidate Firms" attached to the MLA Agreement. The MLA Agreement does not define "Excluded Attorneys and Candidate Firms," but simply states that MLA would not earn a fee for any attorney or candidate firm on that excluded list. SBG points to emails from Orce to Donlon as containing additional information that R+C communicated to MLA regarding why firms were listed on Exhibit A. But when Orce sent the executed Agreement (which included Exhibit A) to Donlon, Orce noted only that he had included "the list of Excluded Firms." ECF No. 62-10 at 1. Six days before sending the executed agreement, Orce said he would provide "a list of firms we have already had discussions with" once the parties had figured out the terms of the agreement. ECF No. 65-9 at 1. The day before the agreement was executed, Donlon emailed Orce asking him to sign the attached agreement and provide an "addendum list of contacted firms." ECF No. 65-10 at 1. Thus, these emails did not communicate to MLA that SBG—or any recruiter—had introduced the firms to R+C as candidates for mergers or acquisition. As discussed above, what is confidential under the Agreement is SBG's *introduction* of the firm—not the fact that R+C may have had contact with the firm previously or even that the firm might potentially be interested in merger or acquisition. But in any event, SBG would not prevail even accepting the argument it advanced at oral argument—that the Agreement prohibited R+C from disclosing that the three firms were interested in merger or acquisition. The emails at most communicated that R+C had contact with the firms previously and did not disclose whether

the firms were actually interested in merger or acquisition.[7] Accordingly, based on the undisputed facts, R+C did not breach the Agreement. Plaintiff's motion for summary judgment on the breach of contract claim is denied and Defendant's motion for summary judgment on the claim is granted.

### C. Tortious Interference

In Count Two of the Amended Complaint, SBG alleges that it had business and contractual relationships and expectations with the three law firms and R+C "intentionally and unjustifiably interfered" with these relationships and expectations by sharing the names of the firms with MLA. Am. Compl., ECF No. 4 at 3-4. R+C moves for summary judgment on this tortious interference claim, arguing that SBG has failed to demonstrate (1) that it had a business relationship with any of the three firms; (2) that R+C's interference, if any, was intentional and with improper motive or by improper means; or (3) that SBG suffered any actual damages. Def's Mem., ECF No. 62-1 at 31-39. Based on undisputed facts, I conclude that SBG has failed to demonstrate that R+C's interference was improperly motivated or by improper means and therefore R+C is entitled to summary judgment on the tortious interference claim.

To establish a claim of tortious interference with business expectations, a plaintiff must demonstrate: "(1) a business relationship between the plaintiff and another party; (2) the defendant's intentional interference with the business relationship while knowing of the relationship; and (3) as a result of the interference, the plaintiff suffers actual loss." *Hi-Ho Tower, Inc. v. Com-Tronics, Inc.*, 761 A.2d 1268, 1273 (Conn. 2000). "[I]t is an essential

---

[7] In fact, R+C argues that the firms were never candidates for merger or acquisition as they never expressed interest in merging or being acquired by an out-of-state firm. Def.'s Mem. Law Opp'n Mot. Summ. J., ECF No. 66 at 11.

13

element of the tort of unlawful interference with business relations that the plaintiff suffered actual loss." *Id.* at 1276.[8]

In demonstrating the second element, intentional interference, plaintiff must demonstrate that the complained interference was actually "tortious." *Saint Francis Hosp. & Med. Ctr., Inc. v. Hartford Healthcare Corp.*, 655 F. Supp. 3d 52, 86 (D. Conn. 2023). This requirement may be satisfied by allegations that "'the defendant was guilty of fraud, misrepresentation, intimidation or molestation . . . or that the defendant acted maliciously.'" *Id.*; *Laura Laaman & Assocs., LLC v. Davis*, No. 3:16-CV-00594 (MPS), 2017 WL 5711393, at *10 (D. Conn. Nov. 27, 2017) (quoting *Robert S. Weiss & Assocs. v. Wiederlight*, 546 A.2d 216, 222-23 (Conn. 1988)). "In other words, a claim for tortious interference with business relations requires 'some improper motive or improper means' that is 'wrongful by some measure beyond the fact of the interference itself.'" *Saint Francis Hosp. & Med. Ctr., Inc.*, 655 F. Supp. 3d at 86 (quoting *Robert S. Weiss & Assocs.*, 546 A.2d at 223). Legitimate competition is "generally not improper or otherwise tortious interference." *Id.*

Even if SBG could establish that it had a business relationship with the three firms, SBG has not presented evidence that R+C acted by improper means or with some improper motive when it included the names of the three law firms on the list provided to MLA. SBG's only argument with respect to this requirement is that a "breach of contract is, by definition, wrongful." Pl.'s Mem. Opp'n Mot. Summ. J., ECF No. 65 at 17. But I have concluded that R+C did not breach the Agreement. Accordingly, SBG has failed to show a genuine dispute as

---

[8] Plaintiff cites Connecticut law in opposing summary judgment on this claim and does not dispute that Connecticut law governs. Pl.'s Mem. Opp'n Mot. Summ. J., ECF No. 65 at 14-17.

to any material fact and R+C is entitled to judgment as a matter of law on the tortious interference claim.

### D. Defamation

In Count Three of the Amended Complaint, SBG alleges that R+C is liable for defamation under South Dakota law based on its statements to media. Am. Compl., ECF No. 4 at 4-16. R+C moves for summary judgment on this claim, arguing that SBG improperly relies on South Dakota law, that R+C cannot be liable for defamation because its statements to the media were true, and that SBG in any event has suffered no damages. Def.'s Mem., ECF No. 62-1 at 39-45. I conclude based on the undisputed facts that R+C is entitled to summary judgment on this claim.

SBG asserts that South Dakota law applies to its defamation claim whereas R+C argues that Connecticut law applies. Both parties argue that they should prevail under either state's law. Because R+C is entitled to summary judgment on the defamation claim under both South Dakota and Connecticut law, I need not determine which state's law applies.[9]

SBG's defamation claim is based on statements that R+C provided that were quoted in articles published on August 11 and 12, 2021. Am. Compl., ECF No. 4 at 5. In particular, R+C told media outlets: "This suit followed our termination of the firm's relationship with The Sweetbridge Group and our retention of another recruiting firm." *Id.*[10]

---

[9] R+C also argues that summary judgment should be granted on the defamation claim because the claim is pleaded specifically under South Dakota law and, according to R+C, it is unconstitutional to subject R+C to South Dakota law when South Dakota lacks personal jurisdiction over R+C. Def.'s Mem., ECF 62-1 at 40. I need not reach this argument because I conclude that R+C prevails even if South Dakota law is applied.

[10] This sentence is part of longer statements from R+C, which are set forth in the factual background section above.

SBG concedes that the statement is technically true because the lawsuit did chronologically follow the termination of the relationship between R+C and SBG and R+C's retention of another recruiting firm. Pl.'s Mem. Opp'n Mot. Summ. J., ECF No. 65 at 18. However, SBG asserts that R+C's statement "implies that SBG filed suit *because* Robinson had retained another recruiting firm and terminated the Agreement." *Id.* at 19. SBG says by R+C "omitting" the fact that SBG alleged breach of contract, R+C implied that "SBG was filing suit out of spite for [R+C's] use of another recruiter." *Id.* R+C argues the statement was "inarguably true and accurate" and did not imply that the suit was retaliatory. *See* Def.'s Mem., ECF No. 62-1 at 42-43.

Under both Connecticut and South Dakota law, a statement may be defamatory if it implies something false. *See Paint Brush Corp., Parts Brush Div. v. Neu*, 599 N.W.2d 384, 397 (S.D. 1998) ("A statement is actionable if it implies a false assertion of objective fact."); *Martin v. Hearst Corp.*, 777 F.3d 546, 552 (2d Cir. 2015) (stating that "in certain circumstances even a technically true statement can be so constructed as to carry a false and defamatory meaning by implication or innuendo") (citing *Strada v. Conn. Newspapers, Inc.*, 477 A.2d 1005 (Conn. 1984)).

The South Dakota Supreme Court has explained that "[t]he truth of a defamatory statement is measured by the ordinary implication of the words at the time the statement was made." *Guilford v. Nw. Pub. Serv.*, 581 N.W.2d 178, 180 (S.D. 1998). Here, R+C did not say that SBG brought the suit *because* R+C had fired SBG. Rather, R+C's statement set forth a truthful chronology of events regarding the dissolution of the relationship between parties. The sentence that SBG takes issue with is situated in a longer statement by R+C that explains the history of R+C's relationship with SBG. The context is media coverage of a lawsuit brought

16

by SBG alleging that R+C breached its contract with SBG. R+C's statement is not rendered defamatory for declining to reiterate SBG's allegation that R+C breached the contract. *See Martin*, 777 F.3d at 553 (rejecting plaintiff's "contention that the reports of her arrest are defamatory because they fail to mention that the case against her was eventually nolled"). Because no reasonable jury could find the statement defamatory, R+C is entitled to summary judgment on this claim.[11]

## IV.  CONCLUSION

For these reasons, Plaintiff's Motion for Partial Summary Judgment is **DENIED** and Defendant's Motion for Summary Judgment as to all counts is **GRANTED**.

The Clerk of Court is respectfully directed to enter judgment for the Defendant, and to close this case.

**SO ORDERED.**

New Haven, Connecticut
July 18, 2025

/s/*Sarah F. Russell*
SARAH F. RUSSELL
United States District Judge

---

[11] In addition, SBG has failed to point to any actual harm resulting from R+C's statements. SBG appears to concede as much, instead asserting that the doctrine of defamation per se applies and thus injury to reputation may be presumed. Pl.'s Mem. Opp'n Mot. Summ. J., ECF No. 65 at 19. SBG asserts that R+C's statement "is defamation per se because it is a charge of incompetence and improper business conduct." *Id.* at 21. But R+C did not say SBG was incompetent or accuse it of improper business conduct. Instead, R+C provided a factually true chronology of its relationship with SBG.